IN THE MATTER OF: A.K.

No. COA04-986-2

(Filed 1 August 2006)

**Child Abuse and Neglect— standard of proof—prior orders involving sibling—insufficiency**

Allegations in a petition alleging child abuse, neglect or dependency shall be proven by clear and convincing evidence. The trial court here could not conclude that the child would be at

substantial risk of neglect in the custody of the parents because it considered only prior orders concerning a sibling, and the only order concerning the sibling that contained findings by the clear and convincing standard of proof was from a hearing many months earlier.

Appeal by respondent father from order entered 17 January 2004 by Judge Gary S. Cash in Buncombe County District Court. Originally heard in the Court of Appeals 26 January 2005, and now on remand from the Supreme Court of North Carolina, opinion filed 5 May 2006, reversing this Court's opinion filed 15 February 2005.

*Charlotte Wade, for petitioner-appellee Buncombe County Department of Social Services.*

*Richard Croutharmel, for respondent-appellant father.*

*Elizabeth Spradlin, for respondent-mother.*

*Michael Tousey, for Guardian ad Litem.*

LEVINSON, Judge.

Respondent (father) appeals from an order adjudging his child A.K. neglected. We reverse.

The pertinent facts may be summarized as follows: C.A.K., the older sibling of A.K., was born on 11 January 2002. Less than four weeks later, on 4 February 2002, C.A.K. was taken to the hospital and diagnosed with an infection. After having a seizure, subsequent evaluation revealed that C.A.K. had suffered as many as 16 bone fractures. According to Dr. Dejournett, an emergency room physician, the fractures looked " 'fresh', and were less than 7 to 10 days old." In Dr. Dejournett's opinion, such injuries required some type of major force. C.A.K. was also tested for a metabolic bone deficiency called osteogenesis imperfecta (OI), which could suggest an alternative cause of C.A.K.'s condition. Dr. J. Edward Spence, Director of the Clinical Genetics Center, and Dr. Cynthia Brown suspected abuse. Dr. Ellen Boyd believed that OI possibly explained the fractures.

As a result of a hearing held at the end of July 2002, the trial court concluded in a 4 September 2002 order that C.A.K was a neglected juvenile and found by clear and convincing evidence that the parents of C.A.K. denied that either of them intentionally harmed C.A.K. The trial court also found that father "has at various times stated that

IN RE A.K.

[178 N.C. App. 727 (2006)]

these injuries could have been caused by the hospital staff, people visiting in their home, their dog, or that the child had [a bone deficiency,] OI." Accordingly, the trial court concluded that "it appears that at least some of the physical injuries sustained by the minor child are a result of inappropriate force applied to the child's body by her caretaker(s) or while in their care." C.A.K.'s case was reviewed by the district court numerous times thereafter. In conducting a review on 23 October 2002, the trial court found that the parents of C.A.K. "continued to deny any responsibility for the injuries sustained by the minor child. . . ." Again, in a 16 December 2002 review, the trial court found that "[t]he respondent parents deny any responsibility for the injuries sustained by the minor child. . . ." Based on all the court orders concerning C.A.K., it is evident that the parents' failure to recognize that C.A.K.'s injuries were not the result of OI or some other condition was central to the trial court's conclusion that C.A.K. would be at risk of injury should the juvenile be returned to the parents' care. The record also reveals that the parents were actively involved in the juvenile cases concerning C.A.K. and A.K., and were cooperating with social workers and reunification requirements established by the court.

The subject juvenile, A.K., was born on 10 May 2003. On 14 May 2003, the Buncombe County Department of Social Services (DSS) filed a petition alleging that A.K. was neglected. As a result, A.K. was placed in nonsecure custody. When the petition came on for hearing in November 2003, DSS argued that A.K. should be adjudged neglected based upon C.A.K.'s prior adjudication of neglect pursuant to N.C. Gen. Stat. § 7B-101(15) (2005). According to DSS, A.K. was at substantial risk of injury because of the parents' continuing failure to recognize the true genesis of C.A.K.'s injuries. The trial court took judicial notice of the prior court orders in the matter involving C.A.K., including the adjudication of neglect for C.A.K., and received no additional evidence.

In its order concluding A.K. was a neglected juvenile, the trial court relied upon the prior adjudication of C.A.K. as a neglected juvenile and the review orders concerning C.A.K. discussed above. In its order, the trial court noted that A.K. was an infant. As part of its disposition, the court ordered that A.K. remain with DSS pending the parents' compliance with numerous conditions.

From this adjudication and disposition order, father appeals. Father contends that the trial court's conclusion that A.K. is a

IN RE A.K.

[178 N.C. App. 727 (2006)]

neglected juvenile must be reversed because the trial court, by relying solely on the prior court orders concerning C.A.K., could not conclude that A.K. was at a substantial risk of injury. As part of his argument, father contends that the most recent evidence and findings of fact concerning his failure to acknowledge the cause of C.A.K.'s injuries occurred long before the neglect hearing concerning A.K. This argument has merit.

The district court has subject matter jurisdiction under the Juvenile Code to adjudicate children as abused, neglected and dependent and to enter the appropriate disposition. *In re Van Kooten*, 126 N.C. App. 764, 768, 487 S.E.2d 160, 162 (1997). "The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2005). "Clear and convincing evidence is greater than the preponderance of the evidence standard required in most civil cases." *In re Smith*, 146 N.C. App. 302, 304, 552 S.E.2d 184, 186 (2001). It amounts to "evidence which should fully convince." *Id.* (internal quotation marks omitted). "A proper review of a trial court's finding of . . . neglect entails a determination of (1) whether the findings of fact are supported by 'clear and convincing evidence.' " *In re Pittman*, 149 N.C. App. 756, 763-64, 561 S.E.2d 560, 566 (2002). "The doctrine of collateral estoppel precludes the relitigation of an issue when the issue has previously been litigated and judicially determined." *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 414 474 S.E.2d 127, 128 (1996).

Our General Assembly has defined a neglected juvenile as:

A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15) (2005).

In interpreting G.S. § 7B-101(15), we have held that a prior adjudication of neglect is a relevant factor in a current adjudication of neglect:

It is clear from section 7A-517(21) [now G.S. § 7B-101(15)] that evidence of abuse of another child in the home is relevant in determining whether a child is a neglected juvenile. However, it is also clear that the statute does not mandate the result requested by DSS. . . . Rather, the statute affords the trial judge some discretion in determining the weight to be given such evidence. We believe the trial court in the case at hand complied with the statute and considered the evidence as a relevant factor. . . .

*In Re Nicholson and Ford,* 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994).

In the instant case, the record reveals that the trial court relied upon all prior orders concerning C.A.K. in entering its adjudication of A.K. as a neglected juvenile. Of these orders, only the adjudication order of C.A.K. as a neglected juvenile included findings of fact that were established by clear and convincing evidence. All subsequent custody review and permanency planning orders for C.A.K.—orders that stated the parents continued to deny culpability or recognize the true cause of C.A.K.'s injuries—included findings of fact that were not established by clear and convincing evidence. Thus, the most recent findings related to the parents' failure to acknowledge the cause of C.A.K.'s injuries that the trial court could properly rely on by collateral estoppel (the ones from the order adjudging C.A.K. a neglected juvenile) were based on a hearing date nine (9) months before the date A.K. was removed from the home and as many as fifteen (15) months before the petition alleging A.K. was a neglected juvenile came on for hearing. Thus, the trial court could not, because of the expiration of these months, find that A.K. was at "substantial risk of neglect" because of father's failure to acknowledge the cause of C.A.K.'s injuries.

Even assuming *arguendo* that the trial court could rely on every finding in all orders concerning C.A.K., including the ones that included findings that were not found by clear and convincing evidence, the date of the last hearing concerning C.A.K. occurred 5 February 2003, three (3) months before the petition alleging A.K. was a neglected juvenile was even filed, and as many as nine (9) months before the petition concerning A.K. came on for hearing. There was no evidence introduced related to the parents' progress or, more particularly, whether one or both of the parents continued to deny the true cause of C.A.K.'s injuries. This was, again, central to the trial

court's finding that A.K. was at "substantial risk of neglect." Thus, even if the trial court could rely on every finding by collateral estoppel in every order concerning C.A.K., the expiration of time precluded the trial court, on the facts of this case, from finding that A.K. was at substantial risk of neglect.

Consequently, where the trial court did not accept any formal evidence in addition to its consideration of the prior court orders concerning C.A.K., and the only order concerning C.A.K. that contained findings by the clear and convincing standard of proof was from a hearing occurring many months earlier, the trial court could not, on this record, conclude that "the minor child would be at substantial risk of neglect if placed in the custody of the . . . parents at this time."

Reversed.

Judges McCULLOUGH and ELMORE concur.