TYSON, Judge.
 

 *114
 
 Respondent-mother appeals from an order adjudicating her minor child, J.A.M., to be a neglected juvenile. We reverse.
 

 I. Factual Background
 

 Respondent-mother has a long history of prior involvements with the Mecklenburg County Department of Social Services, Youth and Family
 
 *115
 
 Services Division ("YFS") dating
 
 *263
 
 back to 2007. This history is primarily related to reports of domestic violence with the fathers of six prior children. YFS filed juvenile petitions regarding Respondent-mother's other six children. Her parental rights to those children were terminated by order entered in April 2014. Respondent-mother began a relationship with J.A.M.'s father, which resulted in J.A.M.'s birth in late January 2016. J.A.M.'s father also had a prior history with YFS due to domestic violence, which led to the removal of a child from his custody in 2012.
 

 YFS received a report of J.A.M.'s birth on 24 February 2016. A social worker went to Respondent-mother's home. The social worker found Respondent-mother's home to be appropriate for J.A.M. and that J.A.M. seemed to be healthy and well cared for. The social worker subsequently learned that police had not been called to the home.
 

 Based solely upon the parents' prior histories with YFS, the social worker developed a Safety Assessment in an attempt to determine whether their previous issues had been addressed. Respondent-mother and J.A.M.'s father refused to sign the Safety Assessment. Respondent-mother asserted that they did not need involvement of services from YFS, because J.A.M. was being properly cared for and there were no on-going acts of domestic violence. Respondent-mother also declined to attend a meeting at YFS to determine how YFS would proceed on the report.
 

 Despite the results of the home visit and investigation, YFS subsequently took nonsecure custody of J.A.M. and, on 29 February 2016, filed a petition alleging J.A.M. was a neglected juvenile. YFS alleged J.A.M. was not safe in the care of her parents based solely upon their prior histories. After a hearing on 30 March 2016, the trial court entered an order adjudicating J.A.M. to be a neglected juvenile. At the time of the hearing, Respondent-mother and J.A.M.'s father were no longer living together or involved in a relationship. The court continued custody of J.A.M. with YFS, ordered the parents to "address the issues that led their prior kids and this child [being removed from their] custody," granted the parents twice-weekly supervised visitation with J.A.M., ceased reunification efforts with Respondent-mother due to the termination of her parental rights to her prior children, and set the primary plan of care for J.A.M. as reunification with the father with a secondary plan of guardianship or adoption. Respondent-mother filed timely notice of appeal from the court's order.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court of right by timely appeal from final judgment of the court in a juvenile matter pursuant to N.C. Gen. Stat. § 7B-1001 (2015).
 

 *116
 

 III. Issue
 

 Respondent-mother argues the trial court erred in adjudicating J.A.M. to be a neglected juvenile, because the court's conclusions of law are not supported by findings of fact that are supported by clear, cogent and convincing evidence. We agree.
 

 IV. Standard of Review
 

 This Court reviews a trial court's adjudication of a child to be a neglected juvenile to determine "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact."
 
 In re Gleisner
 
 ,
 
 141 N.C.App. 475
 
 , 480,
 
 539 S.E.2d 362
 
 , 365 (2000) (citations and quotation marks omitted). "The trial court's conclusions of law are reviewable
 
 de novo
 
 on appeal."
 
 In re K.J.D.
 
 ,
 
 203 N.C.App. 653
 
 , 657,
 
 692 S.E.2d 437
 
 , 441 (2010) (citation and quotation marks omitted).
 

 V. Analysis
 

 A neglected juvenile is defined in relevant part as:
 

 A juvenile ... who lives in an environment injurious to the juvenile's welfare.... In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where ... another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
 

 N.C. Gen. Stat. § 7B-101(15) (2015).
 

 To support an adjudication of neglect, the trial court's findings of fact must show "some physical, mental, or emotional impairment
 
 *264
 
 of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline."
 
 In re Stumbo
 
 ,
 
 357 N.C. 279
 
 , 283,
 
 582 S.E.2d 255
 
 , 258 (2003) (citation and quotation marks omitted).
 

 A. Findings of Fact
 

 The trial court made the following findings of fact in its order:
 

 Clear and convincing evidence juv. [sic] is neglected. [Respondent-mother]'s testimony was telling today. Additionally, parents failed to make any substantive progress in their prior cases which resulted in TPR for [Respondent-mother] and [Father]'s child was placed in the custody of that child's mother. Dept. [sic] attempted
 
 *117
 
 to engage parents when it received a referral and both parents declined to work [with] Dept. and reported not needing any services. [Respondent-mother] testified. MGM and SW Sup. West [sic] all testified. Previously [Respondent-mother]'s children were returned to her care and ended up back in [YFS'] custody due to the abuse of one of the juveniles and it appeared [Respondent-mother] was not demonstrating skills learned by service providers. [Father] did not dispute allegations in the petition. [Respondent-mother] has a [history] of dating violent men and [Father] in this case has been found guilty at least twice for assault on a female. [Respondent-mother] acknowledged being aware [Father] had been charged [with] assaulting his sister but [Respondent-mother] said she never asked [Father] if he assaulted his sister despite testifying about the "red flags" she learned in DV servs. [Respondent-mother] testified to having a child [with] the man who abused one of her kids. Dept. [sic] received a total of 12 referrals regarding the [Respondent-mother] and at least 11 referrals pertained to domestic violence. Ct. [sic] took into consideration all the exhibits (1-4) submitted by YFS when making its decision. To date, [Respondent-mother] failed to acknowledge her role in the juvs. [sic] entering custody and her rights subsequently being terminated.
 

 The referenced exhibits attached were a certified copy of the father's criminal record, adjudication orders from 2012 and 2013 involving each parent's prior children, and the 2014 order terminating Respondent-mother's parental rights to her prior children.
 

 Based on these findings, the court concluded:
 

 The child(ren) is/are neglected in that Juv. [sic] resides in an environment in which both parents have a [history] of domestic violence/assault and each parent had a child enter [YFS] custody that was deemed abused while in the care of each parent. All of juveniles' siblings were adjudicated neglected. No evidence the parents have remedied the injurious environment they created for the other children.
 

 The last two sentences of this paragraph are conclusions instead of findings of fact and will be treated as such.
 
 In re M.R.D.C
 
 .,
 
 166 N.C.App. 693
 
 , 697,
 
 603 S.E.2d 890
 
 , 892-93 (citations and quotation marks omitted),
 
 disc. review denied
 

 359 N.C. 321
 
 ,
 
 611 S.E.2d 413
 
 (2005) (holding where
 
 *118
 
 a finding of fact is essentially a conclusion of law, it will be treated as a conclusion of law which is reviewable
 
 de novo
 
 on appeal).
 

 The court's "findings," which are more akin to abbreviated trial notes than actual findings, do not support its conclusion that J.A.M. is a neglected juvenile. The court's first finding, "[c]lear and convincing evidence juv. [sic] is neglected" is a conclusion of law, and the second finding, "[Respondent-mother]'s testimony was telling today" is meaningless, in that the court does not explain how Respondent-mother's testimony was "telling." Several of the court's other findings are simply procedural statements that cannot support any legal conclusion, including: "[Respondent-mother] testified. MGM and SW Sup. West [sic] all testified," "[Father] did not dispute the allegations in the petition," and "Ct. [sic] took into consideration all the exhibits (1-4) submitted by YFS when making its decision."
 

 The trial court made three findings regarding J.A.M.'s current living situation: (1)
 

 *265
 
 YFS conducted a home visit, visited with J.A.M.'s parents, and that Respondent-mother and father stated they did not need services and declined to work with YFS; (2) although Respondent-mother knew J.A.M.'s father had been charged with assaulting his sister, she had never asked him about the assault; and, (3) Respondent-mother had never acknowledged her role in the termination of her parental rights to her prior children.
 

 Respondent-mother does not challenge the first two findings, but contends the trial court's finding that she never acknowledged her role in the prior termination of her parental rights is unsupported by the evidence. We agree. While Respondent-mother testified that she was not personally involved in the physical abuse of one of her prior children, because she was upstairs asleep at the time, she admitted the termination of her parental rights to her prior children involved poor decisions and choices she made, and she was not trying to defend those past decisions and choices. This evidence directly contradicts the finding and there is no evidence in the record to the contrary. This finding cannot support the trial court's conclusion that J.A.M. is a neglected juvenile.
 

 Other than the finding involving Respondent-mother's failure to ask J.A.M.'s father about his alleged assault on his sister, the only findings of fact made by the trial court which tend to support its conclusion J.A.M. is a neglected juvenile all pertain to the parents' history with their prior children. These findings include: (1) J.A.M.'s siblings were adjudicated neglected; (2) Respondent-mother and J.A.M.'s father did not make any substantive progress in their prior cases, leading to the termination of Respondent-mother's parental rights and the permanent placement
 
 *119
 
 of the father's child with her mother; (3) Respondent-mother's prior children were returned to her care during the previous case, but subsequently removed due to the abuse of one child and Respondent-mother's failure to make progress on her case; (4) Respondent-mother has a history of dating violent men; (5) J.A.M.'s father has two prior convictions for assault on a female; (6) 11 of 12 referrals to YFS in Respondent-mother's previous juvenile case involved domestic violence; and, (7) Respondent-mother had a child with a man who had abused one of her children.
 

 B. Lack of Evidence or Findings
 

 The trial court failed to make any findings of fact regarding any current domestic violence. No evidence was presented of any instances of domestic violence between Respondent-mother and J.A.M.'s father or that either parent had engaged in domestic violence while in J.A.M.'s presence. Moreover, the father's last proven incident of domestic violence occurred more than 42 months prior to J.A.M.'s birth.
 

 Similarly, Respondent-mother's most recent documented instance of domestic violence occurred in June 2012, more than 43 months prior to J.A.M.'s birth. Respondent-mother and J.A.M.'s father maintained an appropriate home, and both denied they needed services to alleviate concerns YFS had regarding their home. YFS presented no evidence such services were needed. No evidence supports the lack of suitability of J.A.M.'s current home environment.
 

 The court's findings of fact are also notably silent regarding whether, in the intervening years since the conclusion of the parents' prior juvenile cases, the parents have remedied the injurious environments of their prior children.
 

 The court found no evidence had been presented that the parents had remedied the issues that caused the prior injurious environments. Nevertheless, the burden of proof rests upon YFS to prove its allegations by clear, cogent, and convincing evidence.
 
 In re K.J.D.
 
 ,
 
 203 N.C.App. at 657
 
 ,
 
 692 S.E.2d at 441
 
 . The absence of evidence cannot support usurpation of parental rights. YFS must introduce relevant clear, cogent, and convincing evidence supporting any allegation of neglect, or any other dereliction of parental responsibility which it failed to do.
 
 See
 
 N.C. Gen. Stat. § 7B-805 (2015) ("The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence."). Additionally, the court's findings do not show J.A.M. suffered from or is at a substantial risk to suffer from any physical, mental, or
 
 *266
 
 emotional impairment as a consequence of living in Respondent-mother's home.
 
 *120
 
 Due to the intervening years between the prior cases and the facts before us, we conclude the parents' past histories, coupled only with Respondent-mother's failure to inquire about an alleged incident of prior domestic violence by J.A.M.'s father, do not support a legal conclusion that J.A.M. is a neglected juvenile.
 
 See
 

 In re A.K.
 
 ,
 
 178 N.C.App. 727
 
 , 732,
 
 637 S.E.2d 227
 
 , 230 (2006) (holding the trial court erred in relying solely on nine- and fifteen-month-old orders concluding a juvenile's sibling was neglected to support a conclusion that the juvenile was also neglected). No evidence supports the trial court's findings of fact. The findings do not support its conclusion that J.A.M. is a neglected juvenile because she lives in an environment injurious to her welfare.
 

 VI. Conclusion
 

 The trial court's findings of fact are not supported by clear, cogent, and convincing evidence. These findings do not support the trial court's conclusion that J.A.M. was neglected. The order appealed from is reversed.
 
 It is so ordered.
 

 REVERSED.
 

 Judges BRYANT and McCULLOUGH concur.