ARROWOOD, Judge.
*811 This case comes before us on remand from the North Carolina Supreme Court for reconsideration and for proper application of the appellate standard of review to the trial court's findings and conclusions of law. On remand, we consider respondent-mother's appeal from an order adjudicating her daughter, juvenile J.A.M., neglected and ceasing all future reunification efforts with respondent-mother. After careful review, we affirm.
I. Background
Respondent-mother has a long history of involvement with Mecklenburg Department of Social Services, Youth and Family Services ("YFS") that began in 2007 due to allegations of domestic violence. Since then, YFS' involvement with respondent-mother has been primarily related to her history of violent relationships with the fathers of her previous six children, in which the children witnessed domestic violence, and also were caught in the middle of physical altercations. During this time, respondent-mother repeatedly declined YFS services and continued to deny, minimize, and avoid talking about the violence. The most serious incident of violence occurred in June 2012 when "following another domestic violence incident between herself and" one of her children's father, respondent-mother placed one of her children "in an incredibly unsafe situation sleeping on the sofa with [his father] for the night, which resulted in [the child] suffering severe, life-threatening injuries, including multiple skull fractures, at the hands of [the father.]" Matter of J.A.M. , 370 N.C. at 465, 809 S.E.2d at 580. After observing the severity of the injuries the following morning, respondent-mother "did not dial 911 for over two hours[,]" and, "[a]fterwards, she refused to acknowledge [the child's] 'significant special needs' that resulted from his injuries, claiming 'there is nothing wrong with him,' and proceeded to have another child with [the same father] in 2013 when he was out *812 on bond for charges of felony child abuse." Id. at 465, 809 S.E.2d at 580. Subsequently, on 21 April 2014, respondent-mother's parental rights were terminated to her six children, largely because she failed "to take any steps to change the pattern of domestic violence and lack of stability for the children since 2007." Id. at 465, 809 S.E.2d at 580 (internal quotation marks omitted).
YFS received a report on 25 February 2016 that respondent-mother had given birth to J.A.M. On 29 February 2016, DSS filed a juvenile petition alleging neglect of J.A.M. The trial court conducted a contested adjudication hearing on 30 March 2016. The trial court received the adjudication and termination of parental rights orders for respondent-mother *903 and J.A.M.'s father's other children into evidence. J.A.M.'s father's criminal record was also admitted into evidence.
Respondent-mother testified at the hearing, vaguely acknowledging that she made " 'bad decisions' and 'bad choices' in the past, without offering specific examples except for 'giv[ing] men benefits of the doubts.' " Matter of J.A.M. , 370 N.C. at 465, 809 S.E.2d at 580. She also testified:
Q. Why were your rights terminated?
A. Because when my child came back into-my kids came back into custody, due to my child being physical injury [sic ] by his father [ ]. That's-
Q. So your understanding is that your rights to your six other children was-were terminated because of one child being physically abused?
A. Oh, yes, ma'am. ...
Q. And what role do you think you played in your child getting hurt by that father?
A. I was upstairs sleeping.
Q. Okay.
A. I didn't have-I didn't have a role into what my child being hurt [sic ]. I didn't play a role in that.
Q. And so basically, do you feel that your rights to the six other children, your rights were unjustly terminated?
A. Yes, ma'am. I do feel that way.
*813 On 30 March 2016, the trial court entered an order finding that J.A.M.'s parents had failed to make any substantive progress in their prior cases, and both parents declined to work with YFS and reported not needing any services. The trial court also found:
Previously [respondent-mother]'s children were returned to her care and ended up back in [YFS'] custody due to the abuse of one of the juveniles and it appeared [respondent-mother] was not demonstrating skills learned by service providers. [Father] did not dispute allegations in the petition. [Respondent-mother] has a [history] of dating violent men and [father] in this case has been found guilty at least twice for assault on a female. [Respondent-mother] acknowledged being aware [father] had been charged [with] assaulting his sister but [respondent-mother] said she never asked [father] if he assaulted his sister despite testifying about the "red flags" she learned in DV servs. [Respondent-mother] testified to having a child [with] the man who abused one of her kids. Dept. [sic ] received a total of 12 referrals regarding [respondent-mother] and at least 11 referrals pertained to domestic violence. Ct. [sic ] took into consideration all the exhibits (1-4) submitted by YFS when making its decision. To date, [respondent-mother] failed to acknowledge her role in the juvs. [sic ] entering custody and her rights subsequently being terminated.
Based on these findings of fact, the trial court adjudicated J.A.M. neglected:
The child(ren) is/are neglected in that Juv. [sic ] resides in an environment in which both parents have a [history] of domestic violence/assault and each parent had a child enter [YFS] custody that was deemed abused while in the care of each parent. All of juveniles' siblings were adjudicated [n]eglected. No evidence the parents have remedied the injurious environment they created for their other children.
The trial court placed J.A.M. in DSS custody and ceased all future reunification efforts with respondent-mother. Respondent-mother appeals.
In Matter of J.A.M. , --- N.C. App. ----, 795 S.E.2d 262 (2016) (" J.A.M. I "), this Court first considered respondent-mother's appeal, reversing the trial court's order, holding the findings did not support the conclusion that J.A.M. was neglected, and the trial court's findings of fact were *814 not supported by clear, cogent, and convincing evidence. Id. at ----, 795 S.E.2d at 266. The Supreme Court determined that our Court misapplied the standard of review in J.A.M. I , and remanded to our Court for reconsideration and proper application of the standard of review. Matter of J.A.M. , 370 N.C. at ----, 809 S.E.2d at 581.
II. Discussion
On appeal, respondent-mother argues the trial court erred in adjudicating J.A.M. to be a neglected juvenile because this conclusion *904 of law is not supported by sufficient findings of fact that are supported by clear and convincing competent evidence. Specifically, she argues there was insufficient evidence related to the care and supervision of J.A.M., and that the trial court erred by relying almost exclusively on the prior neglect adjudications of respondent-mother and J.A.M.'s father's other children. We disagree.
As noted by the Supreme Court, "[i]n a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re J.A.M. , 370 N.C. at 464, 809 S.E.2d at 580 (citations and internal quotation marks omitted). "The trial court's conclusions of law are reviewable de novo on appeal." In re K.J.D. , 203 N.C. App. 653, 657, 692 S.E.2d 437, 441 (2010) (citation and internal quotation marks omitted).
A neglected juvenile
does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare .... In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (2017). Under N.C. Gen. Stat. § 7B-101(15), "evidence of abuse of another child in the home is relevant in determining whether a child is a neglected juvenile." Matter of Nicholson , 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994). "[T]he statute affords the trial judge some discretion in determining the weight to be given such *815 evidence." Id. at 94, 440 S.E.2d at 854. The decision "must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean , 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).
Here, the trial court's determination that J.A.M. is a neglected juvenile was based primarily on events that took place before J.A.M. was born. The trial court previously terminated respondent-mother's parental rights as to six children on grounds of neglect, willfully leaving the children in foster care or placement outside the home for more than twelve months, and willfully failing to pay a reasonable portion of the cost of care. The trial court also adjudicated J.A.M.'s father's other child, from a previous relationship, as abused and neglected. The records of these past adjudications were incorporated into J.A.M.'s adjudication order by reference. Our Supreme Court held "there was clear and convincing evidence to support the trial court's finding of fact that respondent 'failed to acknowledge her role' both in her previous six children 'entering custody' and in 'her rights subsequently being terminated.' " In re J.A.M., 370 N.C. at 465, 809 S.E.2d at 581.
The evidence at the adjudication hearing "tended to show that respondent has a long history of violent relationships with the fathers of her previous six children, in which [her] children not only witnessed domestic violence, but were caught in the middle of physical altercations." Matter of J.A.M., 370 N.C. at 465, 809 S.E.2d at 580 (internal quotation marks omitted). In the most serious incident, one of her children suffered life-threatening injuries, including multiple skull fractures, and, the morning following the abuse, respondent-mother did not dial 911 for over two hours. Id. at ----, 809 S.E.2d at 580. The trial court found "[n]o evidence the parents have remedied the injurious environment they created for their other children."
In predicting risk of future neglect in a newborn case, the trial court "must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case" and can consider the parents' failure to remedy conditions as evidence of future neglect. See In re McLean , 135 N.C. App. at 396, 521 S.E.2d at 127. Nonetheless, citing *905 In re A.K. , 178 N.C. App. 727, 637 S.E.2d 227 (2006), respondent-mother argues that the trial court erred by relying on the prior neglect adjudications of her, and J.A.M.'s father's, children.
In In re A.K. , A.K. was adjudicated neglected based upon a previously adjudicated child's neglect and his father's continued failure to *816 acknowledge the cause of the injuries suffered by the previously adjudicated child. Id. at 731, 637 S.E.2d at 229. On appeal, this Court determined that due to the passage of time, the trial court could not find that A.K. was at " 'substantial risk of neglect' because of the father's failure to acknowledge the cause of [the father's other child's] injuries[,]" as the most recent findings that the parents' failed to acknowledge the cause of the injuries "were based on a hearing date nine (9) months before the date A.K. was removed from the home and as many as fifteen (15) months before the petition alleging A.K. was a neglected juvenile came on for hearing." Id. at 731, 637 S.E.2d at 229.
The case before us is factually distinguishable from In re A.K . Unlike the instant case, the trial court in In re A.K. did not receive evidence besides records from the prior adjudication, the "parents were actively involved in the juvenile cases ... and were cooperating with social workers and reunification requirements established by the [trial] court[,]" and there was no evidence that the conditions that led to the prior adjudication still existed. See id. at 729, 731-32, 637 S.E.2d at 228-30.
After our Court decided In re A.K. , we considered a case more similar to the case sub judice , In re N.G. , 186 N.C. App. 1, 650 S.E.2d 45 (2007), aff'd per curiam, 362 N.C. 229, 657 S.E.2d 355 (2008), and distinguished In re A.K. therein. In In re N.G. , we affirmed an adjudication of neglect based in part on a previously adjudicated child where the parents' continued refusal to accept responsibility for injury to previously adjudicated child and an unwillingness to engage in recommended services or to work with or communicate with DSS was evidence that was predictive of future neglect. See In re N.G. , 186 N.C. App. at 9-10, 650 S.E.2d at 51. In re N.G. specifically noted that the evidence of the parents' unwillingness to work and communicate with DSS, and failure to engage in DSS' services was not present in In re A.K. Id. at 9-10, 650 S.E.2d at 51.
Therefore, similarly, the trial court's findings in the case at bar that respondent-mother (1) continued to fail to acknowledge her role in her rights being terminated to her six other children, (2) denied the need for any services for J.A.M.'s case, and (3) became involved with the father, who engaged in domestic violence, resulting in at least two convictions, even though domestic violence was one of the reasons her children were removed from her home, constitute evidence that the trial court could find was predictive of future neglect. See In re N.G. , 186 N.C. App. at 9-10, 650 S.E.2d at 51.
Despite these findings, which are supported by clear and competent evidence, the dissent maintains that the trial court neither found *817 nor cited evidence that the parents had not remedied the prior injurious environment. We disagree. The trial court found that respondent-mother continued to refuse to work with YFS, failed to acknowledge her role in her rights being terminated to her other six children, and became involved with the father, who the trial court found engaged in domestic violence, even though that was one of the reasons her other children were removed from her home. It was within the trial court's discretion to weigh this evidence in light of the severity of past neglect towards her other children, including the uncontroverted evidence that one child was nearly killed while living in the home, and other children were traumatized. In accordance with our case law, this evidence is consistent with a substantial risk of future injury in the home. See In re N.G. , 186 N.C. App. at 9-10, 650 S.E.2d at 51.
The cumulative weight of the trial court's findings are sufficient to support an adjudication of neglect, and our Court may not reweigh the underlying evidence on appeal. Accordingly, we affirm the adjudication of neglect.
AFFIRMED.
Judge BRYANT concurs.
Judge TYSON dissents by separate opinion.