IN THE SUPREME COURT OF NORTH CAROLINA

No. 7PA17-3

Filed 25 September 2020

IN THE MATTER OF: J.A.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 20 May 2019 by Judge Elizabeth T. Trosch in District Court, Mecklenburg County. This matter was calendared for argument in the Supreme Court on 29 July 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Marc S. Gentile, Associate County Attorney, for petitioner-appellee Mecklenburg County Department of Social Services, Youth and Family Services Division.*

*Matthew D. Wunsche, GAL Appellate Counsel, for appellee Guardian ad Litem.*

*Richard Croutharmel for respondent-appellant mother.*

HUDSON, Justice.

Respondent appeals from an order entered by Judge Elizabeth T. Trosch in District Court, Mecklenburg County, on 20 May 2019 terminating her parental rights in J.A.M., a girl born in January 2016.[1] Respondent's counsel has filed a no-merit brief pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate Procedure, and

---

[1] The trial court previously terminated the parental rights of J.A.M.'s father, who is not a party to this appeal. The testimony presented in this case was incorrect to the extent that it states that the father's parental rights in J.A.M. were terminated on 31 March 2016. The father's parental rights were actually terminated on 14 November 2016.

respondent has filed her own written arguments as permitted by that rule. Because we conclude that the issues raised by respondent and her counsel are meritless, we affirm.

On 29 February 2016, soon after J.A.M.'s birth, the Mecklenburg County Department of Social Services, Youth and Family Services Division (YFS), filed a juvenile petition alleging that the infant child was neglected due to the serious domestic violence histories of both parents. With regard to respondent, the juvenile petition alleged that she "had a child receive life[-]threatening injuries while in her care in the past and [had] her rights terminated to six other children." The juvenile petition further noted that "[b]oth parents refused to sign a Safety Assessment, stating that [respondent] does not trust anyone with YFS."

In a prior decision in this case, we summarized respondent's history with YFS in Mecklenburg County as follows:

> Respondent[ ] has a significant history of involvement with YFS extending back to 2007 relating to children born prior to J.A.M. . . . [R]espondent[ ] has a long history of violent relationships with the fathers of her previous six children, during which her children "not only witnessed domestic violence, but were caught in the middle of physical altercations." Furthermore, during this period, she repeatedly declined services from YFS and "continued to deny, minimize and avoid talking about incidences of violence." All of this resulted in her three oldest children first entering the custody of YFS on 24 February 2010.
>
> The most serious incident occurred in June 2012 when respondent[ ] was in a relationship with E.G. Sr., the father of her child E.G. Jr., a relationship that—like prior

relationships between respondent[ ] and other men—had a component of domestic violence. Respondent[ ] had recently represented to the court that "her relationship with E.G. Sr. was over" and stated that she "realized that the relationship with E.G. Sr. was bad for her children"; however, she quickly invited E.G. Sr. back into her home. Following another domestic violence incident between respondent[ ] and E.G. Sr., E.G. Jr. "was placed in an incredibly unsafe situation sleeping on the sofa with E.G. Sr." for the night, which resulted in E.G. Jr. suffering severe, life-threatening injuries, including multiple skull fractures, at the hands of E.G. Sr. The next morning, respondent[ ] "observed E.G. Jr.'s swollen head, his failure to respond, and his failure to open his eyes or move his limbs," but she did not dial 911 for over two hours. Following this incident, respondent[ ]'s children re-entered the custody of YFS. Afterwards, she refused to acknowledge E.G. Jr.'s "significant special needs" that resulted from his injuries, maintaining that "there was nothing wrong with him" and "stating that he did not need all the services that were being recommended for him." Respondent[ ] proceeded to have another child with E.G. Sr. when he was out on bond for charges of felony child abuse.

In response to respondent[ ]'s failure to protect E.G. Jr., as well as her other children, her parental rights to the six children she had at the time were terminated in an order filed on 21 April 2014 by Judge [Louis A.] Trosch. The 2014 termination order was based largely on the court's finding that she had "not taken any steps to change the pattern of domestic violence and lack of stability for the children since 2007."

*In re J.A.M.* (*J.A.M. II*), 372 N.C. 1, 2–3, 822 S.E.2d 693, 695 (2019) (cleaned up).

Judge Louis A. Trosch[2] held a hearing on YFS's juvenile petition on 30 March

---

[2] Judge Louis A. Trosch and Judge Elizabeth T. Trosch are both district court judges in Mecklenburg County. Because both judges entered orders in this matter, they are referred

2016 and entered an order the same day adjudicating J.A.M. a neglected juvenile and ordering that reunification efforts with respondent were not required based on the trial court's previous termination of her parental rights in J.A.M.'s six siblings. As part of the adjudication and disposition order, the trial court maintained J.A.M. in YFS custody and awarded respondent one hour of supervised visitation semiweekly.

Respondent appealed the 30 March 2016 adjudication and disposition order. While her appeal was pending, the trial court continued to conduct permanency planning hearings. In an order entered on 12 April 2016, Judge Louis Trosch suspended respondent's visitation with J.A.M., reaffirmed that efforts for reunification with respondent were not required, and ordered YFS to file for termination of respondent's parental rights within sixty days. YFS filed a motion to terminate respondent's parental rights in J.A.M. on 10 May 2016 (TPR motion). The TPR motion was held in abeyance pending the outcome of respondent's appeal from the initial adjudication and disposition order.[3]

In an opinion filed on 20 December 2016, the North Carolina Court of Appeals reversed the adjudication and disposition order holding that the evidence and the trial court's findings of fact did not support the trial court's adjudication of neglect. *In re J.A.M.*, 251 N.C. App. 114, 120, 795 S.E.2d 262, 266 (2016), *rev'd per curiam*, *In*

---

to by their first and last names.

[3] On 2 September 2016, YFS filed a motion to terminate the parental rights of J.A.M.'s father. The trial court held a hearing on the motion on 31 October 2016 and terminated the father's parental rights in an order entered on 14 November 2016.

*re J.A.M.* (*J.A.M. I*), 370 N.C. 464, 809 S.E.2d 579 (2018). YFS and the guardian *ad litem* (GAL) filed a joint petition for discretionary review in this Court on 6 January 2017, which we allowed by order entered on 8 June 2017.

On 11 January 2017, following the Court of Appeals' decision reversing the trial court's order adjudicating J.A.M. to be a neglected juvenile, respondent filed a motion to reinstate her supervised visitation privileges. Judge Elizabeth Trosch granted the motion, awarding respondent one hour of supervised visitation with J.A.M. biweekly and authorizing YFS to expand respondent's supervised visitation privileges.

After we granted discretionary review in *J.A.M. I*, Judge Elizabeth Trosch again suspended respondent's visitation in a permanency planning hearing order entered on 22 August 2017 finding that respondent

> has begun to visit with the juvenile but has engaged in no other service[s] related to domestic violence, mental health, parenting or substance abuse. [Respondent] is currently pregnant and refuses to provide any information related to the father of that child. [Respondent] has chosen to take no action since the Court of Appeals decision to demonstrate she understands the impact that domestic violence has on a child . . . and has shown no evidence of changed behavior.

Respondent appealed the trial court's order, but the Court of Appeals dismissed her appeal, holding that the trial court's order was interlocutory, and denied her petition for writ of certiorari. *In re J.M.*, 259 N.C. App. 250, 812 S.E.2d 413 (2018) (unpublished).

On discretionary review in *J.A.M. I*, this Court reversed the Court of Appeals'

decision reversing the 30 March 2016 adjudication and disposition order and

remanded "for reconsideration and for proper application of the standard of review."

370 N.C. at 467, 809 S.E.2d at 581. On remand, a divided panel of the Court of

Appeals affirmed the trial court's order. *In re J.A.M.*, 259 N.C. App. 810, 817, 816

S.E.2d 901, 905 (2018), *aff'd*, 372 N.C. 1, 822 S.E.2d 693 (2019). Respondent appealed

to this Court.

In *J.A.M. II*, we affirmed the Court of Appeals' decision in an opinion filed on

1 February 2019. 372 N.C. at 11, 822 S.E.2d at 700. We held the trial court's findings

of fact supported the trial court's conclusion that J.A.M. was a neglected juvenile

based on the substantial risk of harm she faced in respondent's care.

> Combined with the lengthy record from her past
> cases, the findings that respondent[ ] believed she did not
> need any services from YFS, had opted not to directly
> confront her romantic partner's prior domestic violence
> history, and continued to minimize the role her own prior
> decisions played in the harm her older children had
> suffered all support a conclusion that respondent[ ] had not
> made sufficient progress in recognizing domestic violence
> warning signs, in accurately assessing poor decisions from
> the past, or in identifying helpful resources. It was proper
> for the trial court to then reach the conclusion that
> respondent[ ] had not developed the skills necessary to
> avoid placing J.A.M. in a living situation in which she
> would suffer harm.

*Id.* at 10–11, 822 S.E.2d at 699.

Following our decision in *J.A.M. II*, YFS provided notice of a hearing on the

TPR motion. Respondent filed a motion for Judge Elizabeth Trosch's recusal on the ground that she had conducted multiple permanency planning hearings in the case since January 2017 and had maintained a primary permanent plan of adoption for J.A.M. based on her assessment of the child's best interests.[4] Inasmuch as Judge Elizabeth Trosch had "already formed an opinion that termination [of respondent's parental rights was] in the child's best interest[s]," respondent argued that her recusal was required by the Due Process Clause of the Fourteenth Amendment as well as Canon 3C(1) of the North Carolina Code of Judicial Conduct. Judge Elizabeth Trosch denied respondent's motion to recuse in a written order entered on 14 March 2019, finding as follows:

> 4. The practice in Mecklenburg County and others across this state is that the same judge will hear matters regarding the same family. It is known colloquially as "one judge-one family." Thus, it is common practice for the same judge to hear both an underlying juvenile court matter with a family and then also hear a Termination of Parental Rights (TPR) proceeding involving that same family.
>
> 5. This one judge-one family practice has not been found by the appellate courts to be inappropriate or to prejudice litigants or to violate the Constitutional rights of the litigants.
>
> 6. A juvenile court judge hearing a TPR proceeding is presumed to set aside any incompetent evidence and

---

[4] Respondent also erroneously claimed that Judge Elizabeth Trosch entered the 2014 order terminating her parental rights to her six older children and thus "has independent knowledge about an allegation [made] by YFS" in the TPR motion. The record actually shows that Judge Louis Trosch entered the prior termination order.

to decide the matter solely based upon the record
evidence presented during the proceeding.

7.      [Respondent] has not demonstrated that she will be
prejudiced by the undersigned remaining as the
judge of record.

Judge Elizabeth Trosch heard the TPR motion on 8 April 2019. Respondent was represented by counsel but did not attend the hearing. Counsel for respondent offered no evidence but cross-examined YFS's witness, objected to the introduction of the GAL's report at disposition, and made closing arguments at each stage of the hearing.

Judge Elizabeth Trosch entered an "Order Terminating Parental Rights of Respondent Mother" (termination order) on 20 May 2019. In adjudicating grounds for termination under N.C.G.S. 7B-1111(a)(1), Judge Elizabeth Trosch concluded that respondent had previously neglected J.A.M. "and there remains a high probability of the repetition of neglect." *See* N.C.G.S. 7B-1111(a)(1) (2019). Judge Elizabeth Trosch also adjudicated grounds for terminating respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(9) in that "respondent . . . had her parental rights to six other children terminated involuntarily by a court of competent jurisdiction and she further lacks the ability or willingness to establish a safe home" for J.A.M. *See* N.C.G.S. 7B-1111(a)(9). Upon written findings addressing the dispositional factors in N.C.G.S. § 7B-1110(a), Judge Elizabeth Trosch further concluded that terminating respondent's parental rights is in J.A.M.'s best interests. *See* N.C.G.S. § 7B-1110(a) (2019).

Respondent filed a notice of appeal from the termination order.

Counsel for respondent has filed a no-merit brief on her behalf pursuant to N.C. R. App. P. 3.1(e). Counsel has advised respondent of her right to file *pro se* written arguments on her own behalf and provided her with the documents necessary to do so. Respondent has submitted *pro se* arguments to this Court, which we consider below.

Respondent first denies neglecting J.A.M. and claims that YFS "has been using [her] past to take [her children] away and to keep them from [her]." Respondent asserts that "it is an illegal and an unconstitutional practice for [YFS] to remove children because they witness domestic violence" and that YFS violated her rights under the Fourteenth Amendment by removing J.A.M. from her care without probable cause.

As respondent's arguments challenge J.A.M.'s initial removal by YFS and her adjudication as a neglected juvenile on 30 March 2016, we conclude that her arguments are foreclosed by our decision affirming the trial court's adjudication and disposition order in *J.A.M. II*, 372 N.C. at 11, 822 S.E.2d at 700. Our decision in *J.A.M. II* constitutes "the law of the case" and is binding as to the issues decided therein. *Shores v. Rabon*, 253 N.C. 428, 429, 117 S.E.2d 1, 2 (1960) (per curiam). Accordingly, we overrule respondent's arguments insofar as they concern the trial court's prior adjudication of neglect.

Respondent next accuses YFS and the "Trosch Judges" of bias, alleging that YFS relied on perjured testimony and fraudulent documents to prevail in the proceedings against her. She notes that YFS failed to report at the termination hearing that she is successfully raising her eighth child in South Carolina without incident. Respondent states that she refused to cooperate with YFS because YFS rewards its social workers with financial bonuses and promotions if they successfully terminate a parent's parental rights. She refused to identify the father of her eighth child in order to keep the child out of YFS custody. Respondent declined to sign a case plan because "a case plan is essentially a plea of guilty" and she "did nothing wrong."

Respondent's allegations of corruption, misconduct, and bias find no support in the record. Respondent points to no evidence that YFS employees committed perjury or tendered forged documents to the trial court, or that they received bonuses or promotions for terminating respondent's parental rights in her children. Nor does respondent show that YFS withheld evidence favorable to respondent from the trial court, let alone that YFS had an affirmative duty to present such evidence. We note that respondent was afforded the opportunity to present evidence at the termination hearing and chose not to do so.

Respondent also fails to show any circumstances giving rise to a reasonable perception of judicial bias against her. As Judge Elizabeth Trosch pointed out, it is the practice in North Carolina for one judge to preside over a juvenile case throughout the life of the case. This is known as the "one judge, one family" policy. *See In re*

*M.A.I.B.K.*, 184 N.C. App. 218, 225–26, 645 S.E.2d 881, 886 (2007). Rather than showing a bias, this practice reflects a central policy of the state. As shown on the North Carolina Judicial Branch's website, a "major goal of family court is to consolidate and assign a family's legal issues before a single district court judge or team of judges." *Family Court*, North Carolina Judicial Branch, https://www.nccourts.gov/courts/family-court (last visited Sept. 4, 2020). These judges are experienced in family law matters and receive specialized training so that family courts can produce "more timely, consistent, and thoughtful outcomes." *Id.*

Accordingly, the mere fact that Judge Elizabeth Trosch presided at earlier permanency planning hearings and determined that a permanent plan of adoption was in J.A.M.'s best interests did not require her to recuse herself from the termination hearing. *See, e.g.*, *In re Z.V.A.*, 373 N.C. 207, 215, 835 S.E.2d 425, 431 (2019) ("If the bias alleged here were to be deemed to exist . . . and ultimately to require recusal, then the illogical consequence would follow that a district court would not ever be able to preside over a termination hearing after it had previously set the permanent plan for a juvenile as a plan that would imply or be compatible with termination . . . ."); *In re Faircloth*, 153 N.C. App. 565, 570-71, 571 S.E.2d 65, 69 (2002) ("[K]nowledge of evidentiary facts gained by a trial judge from an earlier proceeding does not require disqualification. Furthermore, we reject any contention that [the judge] should be disqualified because he earlier adjudicated the four children abused and neglected." (citations omitted)).

Finally, we find respondent's insistence that she "did nothing wrong" and her insistence that "it is an illegal and an unconstitutional practice for [YFS] to remove children because they witness domestic violence" to be consistent with Judge Elizabeth Trosch's finding that respondent made no meaningful effort or progress toward resolving the substantial risk posed to J.A.M. by respondent's lengthy history of relationships involving domestic violence. *See generally In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 241 (2006) (upholding "the [trial] court's conclusion that [the child's] exposure to domestic violence rendered him a neglected juvenile"). Moreover, the evidence and Judge Elizabeth Trosch's findings show that respondent refused to engage in "services to ameliorate the substantial risk of domestic violence" or to maintain contact with YFS even at the cost of having no contact with J.A.M. since mid-2017. Respondent's arguments thus have no legal or factual basis.

We also independently review issues identified by respondent's counsel in a no-merit brief filed pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. *See In re L.E.M.*, 372 N.C. 396, 402, 831 S.E.2d 341, 345 (2019). Counsel has identified three issues that could arguably support an appeal, while also explaining why he believes those issues lack merit. The issues presented by counsel are (1) whether Judge Elizabeth Trosch erred by denying respondent's motion for Judge Elizabeth Trosch to recuse herself; (2) whether the termination order contained sufficient findings based on clear, cogent, and convincing evidence to establish the existence of statutory grounds for terminating respondent's parental rights; and

(3) whether Judge Elizabeth Trosch abused her discretion by concluding that it was in J.A.M.'s best interests that respondent's parental rights be terminated.

Having carefully considered the issues identified in the no-merit brief in light of the entire record, we conclude that (1) Judge Elizabeth Trosch did not err in denying respondent's motion for Judge Elizabeth Trosch to recuse herself; (2) the termination order contains sufficient findings based on clear, cogent, and convincing evidence to establish the existence of a statutory ground of neglect under N.C.G.S. § 7B-1111(a)(1) for terminating respondent's parental rights, *see* N.C.G.S. § 7B-1109(f) (2019);[5] and (3) Judge Elizabeth Trosch did not abuse her discretion by concluding that it was in J.A.M.'s best interests that respondent's parental rights be terminated. Accordingly, we affirm the trial court's termination order.

AFFIRMED.

---

[5] Because we determine that the termination order contains sufficient findings based on clear, cogent, and convincing evidence to establish the existence of a statutory ground of neglect under N.C.G.S. § 7B-1111(a)(1), we do not address whether additional grounds for termination exist under subsection (a)(9). *See In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 53-54 (2019) ("[W]here the trial court finds multiple grounds on which to base a termination of parental rights, and 'an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds.' " (quoting *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005))).