IN THE SUPREME COURT OF NORTH CAROLINA

No. 7PA17

Filed 2 March 2018

IN THE MATTER OF: J.A.M.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 795 S.E.2d 262 (2016), reversing an order entered on 30 March 2016 by Judge Louis A. Trosch in District Court, Mecklenburg County. Heard in the Supreme Court on 9 January 2018.

*Matthew D. Wunsche, GAL Appellate Counsel, for appellant Guardian ad Litem; and Marc S. Gentile and Keith S. Smith, Associate County Attorneys, for petitioner-appellant Mecklenburg County Department of Social Services, Youth and Family Services.*

*Richard Croutharmel for respondent-appellee mother.*

PER CURIAM.

It is well settled that "[i]n a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re N.G.*, 186 N.C. App. 1, 4, 650 S.E.2d 45, 47 (2007) (quoting *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997)), *aff'd per curiam*, 362 N.C. 229, 657 S.E.2d 355 (2008); *see also In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984) ("Although the question of the *sufficiency* of the evidence to support the findings may be raised on appeal, our appellate courts are bound by the trial courts' findings of fact

where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." (citations omitted)). Here, in its order adjudicating J.A.M. to be a neglected juvenile, the trial court found that "[t]o date, [respondent-mother] failed to acknowledge her role in the [prior juveniles] entering custody and her rights subsequently being terminated."

The evidence presented at the adjudication phase tended to show that respondent has a long history of violent relationships with the fathers of her previous six children, in which respondent's children "not only witnessed domestic violence, but were caught in the middle of physical altercations." Furthermore, during this time, respondent repeatedly declined services from Mecklenburg County Department of Social Services, Youth and Family Services (YFS), and "continued to deny, minimize and avoid talking about incidences of violence." This resulted in her three oldest children first entering the custody of YFS on 24 February 2010.

The most serious incident occurred in June 2012 when, shortly after respondent represented to the court "that she was through with [E.G., Sr.]" and that "her relationship with [E.G., Sr.] was over" in order to regain custody of her children, she quickly invited E.G., Sr. back into her home. Following another domestic violence incident between herself and E.G., Sr., she "placed [E.G., Jr.] in an incredibly unsafe situation sleeping on the sofa with [E.G., Sr.]" for the night, which resulted in E.G., Jr. suffering severe, life-threatening injuries, including multiple skull fractures, at the hands of E.G., Sr. The next morning, respondent "observed [E.G., Jr.'s] swollen

head, his failure to respond, [and] his failure to open his eyes or move his limbs," but did not dial 911 for over two hours. Following this incident, respondent's children re-entered the custody of YFS. Afterwards, she refused to acknowledge E.G., Jr.'s "significant special needs" that resulted from his injuries, claiming "there is nothing wrong with him," and proceeded to have another child with E.G., Sr. in 2013 when he was out on bond for charges of felony child abuse. Respondent's parental rights to her previous six children were terminated on 21 April 2014 largely owing to her failure to take "any steps to change the pattern of domestic violence and lack of stability for the children since 2007."

At the adjudication hearing below, respondent vaguely acknowledged "[m]aking bad decisions" and "bad choices" in the past, without offering specific examples except for "giv[ing] men benefits of the doubts." Shortly after this, respondent testified:

> Q. Why were your rights terminated?
>
> A. Because when my child came back into -- my kids came back into custody, due to my child being physical injury by his father, [E.G., Sr.]. That's --
>
> Q. So your understanding is that your rights to your six other children was -- were terminated because of one child being physically abused?
>
> A. Oh, yes, ma'am.

Regarding her role in that abuse, respondent testified:

> Q. And what role do you think you played in your

child getting hurt by that father?

> A. I was upstairs sleeping.
>
> Q. Okay.
>
> A. I didn't have -- I didn't have a role into what my child being hurt. I didn't play a role in that.
>
> Q. And so basically, do you feel that your rights to the six other children, your rights were unjustly terminated?
>
> A. Yes, ma'am. I do feel that way.

Plainly, there was clear and convincing evidence to support the trial court's finding of fact that respondent "failed to acknowledge her role" both in her previous six children "entering custody" and in "her rights subsequently being terminated."

The Court of Appeals, however, determined that respondent's vague concession to having made "poor decisions" constituted evidence that "directly contradicts the finding [that respondent failed to acknowledge her role in the children entering custody and her rights subsequently being terminated] and there is no evidence in the record to the contrary." *In re J.A.M.*, ___ N.C. App. ___, ___, 795 S.E.2d 262, 265 (2016). While that evidence potentially "might sustain findings to the contrary," *In re Montgomery*, 311 N.C. at 110-11, 316 S.E.2d at 252-53, the Court of Appeals here misapplied the standard of review in that the trial court's finding was "supported by clear and convincing competent evidence" and is therefore "deemed conclusive," *In re N.G.*, 186 N.C. App. at 4, 650 S.E.2d at 47.

Accordingly, the decision of the Court of Appeals is reversed, and this case is remanded to the Court of Appeals for reconsideration and for proper application of the standard of review.

REVERSED AND REMANDED.