IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-563-2

 Filed: 5 June 2018

Mecklenburg County, No. 16 JA 89

IN THE MATTER OF: J.A.M.

 On remand by order of Supreme Court in Matter of J.A.M., __ N.C. __, 809

S.E.2d 579 (2018), reversing and remanding the unanimous decision of the Court of

Appeals in Matter of J.A.M., __ N.C. App. __, 795 S.E.2d 262 (2016). Originally

appealed by respondent from order entered 30 March 2016 by Judge Louis A. Trosch

in Mecklenburg County District Court. Originally heard in the Court of Appeals

5 December 2016.

 Mecklenburg County Department of Social Services, Youth and Family
 Services, by Christopher C. Peace, for petitioner-appellee.

 Richard Croutharmel for respondent-appellant.

 Poyner Spruill LLP, by Caroline P. Mackie, for guardian ad litem.

 ARROWOOD, Judge.

 This case comes before us on remand from the North Carolina Supreme Court

for reconsideration and for proper application of the appellate standard of review to

the trial court’s findings and conclusions of law. On remand, we consider respondent-

mother’s appeal from an order adjudicating her daughter, juvenile J.A.M., neglected
 IN RE: J.A.M.

 TYSON, J., dissenting

and ceasing all future reunification efforts with respondent-mother. After careful

review, we affirm.

 I. Background

 Respondent-mother has a long history of involvement with Mecklenburg

Department of Social Services, Youth and Family Services (“YFS”) that began in 2007

due to allegations of domestic violence. Since then, YFS’ involvement with

respondent-mother has been primarily related to her history of violent relationships

with the fathers of her previous six children, in which the children witnessed domestic

violence, and also were caught in the middle of physical altercations. During this

time, respondent-mother repeatedly declined YFS services and continued to deny,

minimize, and avoid talking about the violence. The most serious incident of violence

occurred in June 2012 when “following another domestic violence incident between

herself and” one of her children’s father, respondent-mother placed one of her children

“in an incredibly unsafe situation sleeping on the sofa with [his father] for the night,

which resulted in [the child] suffering severe, life-threatening injuries, including

multiple skull fractures, at the hands of [the father.]” Matter of J.A.M., __ N.C. at __,

809 S.E.2d at 580. After observing the severity of the injuries the following morning,

respondent-mother “did not dial 911 for over two hours[,]” and, “[a]fterwards, she

refused to acknowledge [the child’s] ‘significant special needs’ that resulted from his

injuries, claiming ‘there is nothing wrong with him,’ and proceeded to have another

 -2-
 IN RE: J.A.M.

 TYSON, J., dissenting

child with [the same father] in 2013 when he was out on bond for charges of felony

child abuse.” Id. at __, 809 S.E.2d at 580. Subsequently, on 21 April 2014,

respondent-mother’s parental rights were terminated to her six children, largely

because she failed “to take any steps to change the pattern of domestic violence and

lack of stability for the children since 2007.” Id. at __, 809 S.E.2d at 580 (internal

quotation marks omitted).

 YFS received a report on 25 February 2016 that respondent-mother had given

birth to J.A.M. On 29 February 2016, DSS filed a juvenile petition alleging neglect

of J.A.M. The trial court conducted a contested adjudication hearing on

30 March 2016. The trial court received the adjudication and termination of parental

rights orders for respondent-mother and J.A.M.’s father’s other children into

evidence. J.A.M.’s father’s criminal record was also admitted into evidence.

 Respondent-mother testified at the hearing, vaguely acknowledging that she

made “ ‘bad decisions’ and ‘bad choices’ in the past, without offering specific examples

except for ‘giv[ing] men benefits of the doubts.’ ” Matter of J.A.M., __ N.C. at __, 809

S.E.2d at 580. She also testified:

 Q. Why were your rights terminated?

 A. Because when my child came back into -- my kids came
 back into custody, due to my child being physical injury
 [sic] by his father [ ]. That’s --

 Q. So your understanding is that your rights to your six
 other children was -- were terminated because of one

 -3-
 IN RE: J.A.M.

 TYSON, J., dissenting

 child being physically abused?

 A. Oh, yes, ma’am. . . .

 Q. And what role do you think you played in your child
 getting hurt by that father?

 A. I was upstairs sleeping.

 Q. Okay.

 A. I didn’t have -- I didn’t have a role into what my child
 being hurt [sic]. I didn’t play a role in that.

 Q. And so basically, do you feel that your rights to the six
 other children, your rights were unjustly terminated?

 A. Yes, ma’am. I do feel that way.

 On 30 March 2016, the trial court entered an order finding that J.A.M.’s

parents had failed to make any substantive progress in their prior cases, and both

parents declined to work with YFS and reported not needing any services. The trial

court also found:

 Previously [respondent-mother]’s children were returned
 to her care and ended up back in [YFS’] custody due to the
 abuse of one of the juveniles and it appeared [respondent-
 mother] was not demonstrating skills learned by service
 providers. [Father] did not dispute allegations in the
 petition. [Respondent-mother] has a [history] of dating
 violent men and [father] in this case has been found guilty
 at least twice for assault on a female. [Respondent-mother]
 acknowledged being aware [father] had been charged
 [with] assaulting his sister but [respondent-mother] said
 she never asked [father] if he assaulted his sister despite
 testifying about the “red flags” she learned in DV servs.
 [Respondent-mother] testified to having a child [with] the

 -4-
 IN RE: J.A.M.

 TYSON, J., dissenting

 man who abused one of her kids. Dept. [sic] received a total
 of 12 referrals regarding [respondent-mother] and at least
 11 referrals pertained to domestic violence. Ct. [sic] took
 into consideration all the exhibits (1-4) submitted by YFS
 when making its decision. To date, [respondent-mother]
 failed to acknowledge her role in the juvs. [sic] entering
 custody and her rights subsequently being terminated.

Based on these findings of fact, the trial court adjudicated J.A.M. neglected:

 The child(ren) is/are neglected in that Juv. [sic] resides in
 an environment in which both parents have a [history] of
 domestic violence/assault and each parent had a child
 enter [YFS] custody that was deemed abused while in the
 care of each parent. All of juveniles’ siblings were
 adjudicated [n]eglected. No evidence the parents have
 remedied the injurious environment they created for their
 other children.

The trial court placed J.A.M. in DSS custody and ceased all future reunification

efforts with respondent-mother. Respondent-mother appeals.

 In Matter of J.A.M., __ N.C. App. __, 795 S.E.2d 262 (2016) (“J.A.M. I”), this

Court first considered respondent-mother’s appeal, reversing the trial court’s order,

holding the findings did not support the conclusion that J.A.M. was neglected, and

the trial court’s findings of fact were not supported by clear, cogent, and convincing

evidence. Id. at __, 795 S.E.2d at 266. The Supreme Court determined that our Court

misapplied the standard of review in J.A.M. I, and remanded to our Court for

reconsideration and proper application of the standard of review. Matter of J.A.M.,

__ N.C. at __, 809 S.E.2d at 581.

 II. Discussion

 -5-
 IN RE: J.A.M.

 TYSON, J., dissenting

 On appeal, respondent-mother argues the trial court erred in adjudicating

J.A.M. to be a neglected juvenile because this conclusion of law is not supported by

sufficient findings of fact that are supported by clear and convincing competent

evidence. Specifically, she argues there was insufficient evidence related to the care

and supervision of J.A.M., and that the trial court erred by relying almost exclusively

on the prior neglect adjudications of respondent-mother and J.A.M.’s father’s other

children. We disagree.

 As noted by the Supreme Court, “[i]n a non-jury neglect adjudication, the trial

court’s findings of fact supported by clear and convincing competent evidence are

deemed conclusive, even where some evidence supports contrary findings.” In re

J.A.M., __ N.C. at __, 809 S.E.2d at 580 (citations and internal quotation marks

omitted). “The trial court’s conclusions of law are reviewable de novo on appeal.” In

re K.J.D., 203 N.C. App. 653, 657, 692 S.E.2d 437, 441 (2010) (citation and internal

quotation marks omitted).

 A neglected juvenile

 does not receive proper care, supervision, or discipline from
 the juvenile’s parent, guardian, custodian, or caretaker; or
 who has been abandoned; or who is not provided necessary
 medical care; or who is not provided necessary remedial
 care; or who lives in an environment injurious to the
 juvenile’s welfare . . . . In determining whether a juvenile
 is a neglected juvenile, it is relevant whether that juvenile
 lives in a home where another juvenile has died as a result
 of suspected abuse or neglect or lives in a home where
 another juvenile has been subjected to abuse or neglect by

 -6-
 IN RE: J.A.M.

 TYSON, J., dissenting

 an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15) (2017). Under N.C. Gen. Stat. § 7B-101(15), “evidence

of abuse of another child in the home is relevant in determining whether a child is a

neglected juvenile.” Matter of Nicholson, 114 N.C. App. 91, 94, 440 S.E.2d 852, 854

(1994). “[T]he statute affords the trial judge some discretion in determining the

weight to be given such evidence.” Id. at 94, 440 S.E.2d at 854. The decision “must

of necessity be predictive in nature, as the trial court must assess whether there is a

substantial risk of future abuse or neglect of a child based on the historical facts of

the case.” In re McLean, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).

 Here, the trial court’s determination that J.A.M. is a neglected juvenile was

based primarily on events that took place before J.A.M. was born. The trial court

previously terminated respondent-mother’s parental rights as to six children on

grounds of neglect, willfully leaving the children in foster care or placement outside

the home for more than twelve months, and willfully failing to pay a reasonable

portion of the cost of care. The trial court also adjudicated J.A.M.’s father’s other

child, from a previous relationship, as abused and neglected. The records of these

past adjudications were incorporated into J.A.M.’s adjudication order by reference.

Our Supreme Court held “there was clear and convincing evidence to support the trial

court’s finding of fact that respondent ‘failed to acknowledge her role’ both in her

 -7-
 IN RE: J.A.M.

 TYSON, J., dissenting

previous six children ‘entering custody’ and in ‘her rights subsequently being

terminated.’ ” In re J.A.M., __ N.C. at __, 809 S.E.2d at 581.

 The evidence at the adjudication hearing “tended to show that respondent has

a long history of violent relationships with the fathers of her previous six children, in

which [her] children not only witnessed domestic violence, but were caught in the

middle of physical altercations.” Matter of J.A.M., __ N.C. at __, 809 S.E.2d at 580

(internal quotation marks omitted). In the most serious incident, one of her children

suffered life-threatening injuries, including multiple skull fractures, and, the

morning following the abuse, respondent-mother did not dial 911 for over two hours.

Id. at __, 809 S.E.2d at 580. The trial court found “[n]o evidence the parents have

remedied the injurious environment they created for their other children.”

 In predicting risk of future neglect in a newborn case, the trial court “must

assess whether there is a substantial risk of future abuse or neglect of a child based

on the historical facts of the case” and can consider the parents’ failure to remedy

conditions as evidence of future neglect. See In re McLean, 135 N.C. App. at 396, 521

S.E.2d at 127. Nonetheless, citing In re A.K., 178 N.C. App. 727, 637 S.E.2d 227

(2006), respondent-mother argues that the trial court erred by relying on the prior

neglect adjudications of her, and J.A.M.’s father’s, children.

 In In re A.K., A.K. was adjudicated neglected based upon a previously

adjudicated child’s neglect and his father’s continued failure to acknowledge the

 -8-
 IN RE: J.A.M.

 TYSON, J., dissenting

cause of the injuries suffered by the previously adjudicated child. Id. at 731, 637

S.E.2d at 229. On appeal, this Court determined that due to the passage of time, the

trial court could not find that A.K. was at “ ‘substantial risk of neglect’ because of the

father’s failure to acknowledge the cause of [the father’s other child’s] injuries[,]” as

the most recent findings that the parents’ failed to acknowledge the cause of the

injuries “were based on a hearing date nine (9) months before the date A.K. was

removed from the home and as many as fifteen (15) months before the petition

alleging A.K. was a neglected juvenile came on for hearing.” Id. at 731, 637 S.E.2d

at 229.

 The case before us is factually distinguishable from In re A.K. Unlike the

instant case, the trial court in In re A.K. did not receive evidence besides records from

the prior adjudication, the “parents were actively involved in the juvenile cases . . .

and were cooperating with social workers and reunification requirements established

by the [trial] court[,]” and there was no evidence that the conditions that led to the

prior adjudication still existed. See id. at 729, 731-32, 637 S.E.2d at 228-30.

 After our Court decided In re A.K., we considered a case more similar to the

case sub judice, In re N.G., 186 N.C. App. 1, 650 S.E.2d 45 (2007), aff’d per curiam,

362 N.C. 229, 657 S.E.2d 355 (2008), and distinguished In re A.K. therein. In In re

N.G., we affirmed an adjudication of neglect based in part on a previously adjudicated

child where the parents’ continued refusal to accept responsibility for injury to

 -9-
 IN RE: J.A.M.

 TYSON, J., dissenting

previously adjudicated child and an unwillingness to engage in recommended

services or to work with or communicate with DSS was evidence that was predictive

of future neglect. See In re N.G., 186 N.C. App. at 9-10, 650 S.E.2d at 51. In re N.G.

specifically noted that the evidence of the parents’ unwillingness to work and

communicate with DSS, and failure to engage in DSS’ services was not present in In

re A.K. Id. at 9-10, 650 S.E.2d at 51.

 Therefore, similarly, the trial court’s findings in the case at bar that

respondent-mother (1) continued to fail to acknowledge her role in her rights being

terminated to her six other children, (2) denied the need for any services for J.A.M.’s

case, and (3) became involved with the father, who engaged in domestic violence,

resulting in at least two convictions, even though domestic violence was one of the

reasons her children were removed from her home, constitute evidence that the trial

court could find was predictive of future neglect. See In re N.G., 186 N.C. App. at 9-

10, 650 S.E.2d at 51.

 Despite these findings, which are supported by clear and competent evidence,

the dissent maintains that the trial court neither found nor cited evidence that the

parents had not remedied the prior injurious environment. We disagree. The trial

court found that respondent-mother continued to refuse to work with YFS, failed to

acknowledge her role in her rights being terminated to her other six children, and

became involved with the father, who the trial court found engaged in domestic

 - 10 -
 IN RE: J.A.M.

 TYSON, J., dissenting

violence, even though that was one of the reasons her other children were removed

from her home. It was within the trial court’s discretion to weigh this evidence in

light of the severity of past neglect towards her other children, including the

uncontroverted evidence that one child was nearly killed while living in the home,

and other children were traumatized. In accordance with our case law, this evidence

is consistent with a substantial risk of future injury in the home. See In re N.G., 186

N.C. App. at 9-10, 650 S.E.2d at 51.

 The cumulative weight of the trial court’s findings are sufficient to support an

adjudication of neglect, and our Court may not reweigh the underlying evidence on

appeal. Accordingly, we affirm the adjudication of neglect.

 AFFIRMED.

 Judge BRYANT concurs.

 Judge TYSON dissents by separate opinion.

 - 11 -
 No. 16-563-2 – In re: J.A.M.

 TYSON, Judge, dissenting.

 The majority’s opinion concludes the trial court’s findings support the trial

court’s conclusion that J.A.M. was neglected. I disagree and respectfully dissent.

 I. Definition of Neglect

 North Carolina statutes and precedents have consistently required

departments of social services to prove by clear and convincing competent evidence

that “there be some physical, mental or emotional impairment of the juvenile or

substantial risk of such impairment as a consequence of the [parent’s] failure to

provide ‘proper care, supervision, or discipline.’” In re Safriet, 112 N.C. App. 747, 752,

436 S.E.2d 898, 901-02 (1993) (citation omitted). “[T]he decision of the trial court

must of necessity be predictive in nature, as the trial court must assess whether there

is a substantial risk of future abuse or neglect of a child based on the historical facts

of the case.” In re E.N.S., 164 N.C. App. 146, 151, 595 S.E.2d 167, 170 (2004) (citation

omitted).

 “[H]istorical facts of the case” necessarily means the current case and not past

or closed cases involving other juveniles. See id. Petitioner cannot assert a post hoc

ergo propter hoc fallacy from prior cases to avoid its burden of proof or to overcome

the mandates of statutory and case law “procedures for the hearing of juvenile cases

that assure fairness and equity and that protect the constitutional rights of juveniles

and parents[.]”N.C. Gen. Stat. § 7B-100 (2017).
 IN RE: J.A.M.

 TYSON, J., dissenting

 While N.C. Gen. Stat. § 7B-101(15) provides evidence of abuse of another child

in the home is relevant in determining whether a child is a neglected juvenile, it does

not require nor support, standing alone, a determination of present or future neglect.

In re Nicholson, 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994). That fact, while

relevant, cannot overcome the parent’s constitutional rights and serve as the only

basis to support a finding of current neglect or the probability of future neglect of a

different child, who is not impacted by the past neglect. See id. This lack of support

is particularly clear where all other evidence before the court shows no neglect of the

child at issue has occurred, and where, as here, YFS’ evidence shows the parents are

meeting and exceeding the needs of the child. Cases cited in the majority’s opinion

are inapposite and do not control the facts and conclusions before us.

 II. In re E.N.S.

 In the case of In re E.N.S., the respondent’s older child had been removed from

her custody. 164 N.C. App. at 148, 595 S.E.2d at 168. The respondent gave birth to

E.N.S., while the respondent was a resident in a residential drug treatment facility,

and the child was immediately removed from her care. Id. Soon after E.N.S.’ birth,

the respondent violated her established curfew at the treatment facility and took a

sleeping pill, which was considered a violation of the facility’s policy. Id. at 149, 595

S.E.2d at 169.

 2
 IN RE: J.A.M.

 TYSON, J., dissenting

 The respondent subsequently stayed out all night again and smoked

marijuana. Id. at 151, 595 S.E.2d at 170. The respondent was discharged from the

treatment facility. Id. Further evidence established that the respondent “still

struggle[d] with substance abuse.” Id. This Court recognized the evidence revealed

that the respondent’s behavior had not improved and “the trial court carefully

weighed and assessed the evidence regarding a past adjudication of neglect and the

likelihood of its continuation in the future before concluding that E.N.S. would be at

risk if allowed to remain with respondent.” Id. Unlike those facts, here the evidence

shows Respondent gave birth to another healthy child who was taken to an

appropriate home. Nothing shows Respondent is taking drugs or engaging in any

activities to put J.A.M. at risk for neglect. All evidence shows J.A.M. is receiving

proper care from both parents. In re E.N.S. provides no support for the trial court’s

order or the analysis and conclusions in the majority’s opinion.

 III. In re C.G.R.

 In the case of In re C.G.R., 216 N.C. App. 351, 360, 717 S.E.2d 50, 56 (2011),

and also unlike the facts before us, “the trial court’s finding that Mary was a neglected

juvenile was not based only on respondent’s prior neglect of Charlie.” The trial court

made additional findings that the respondent had failed to maintain stable

employment and housing and continued to be dependent upon others. Id.

 3
 IN RE: J.A.M.

 TYSON, J., dissenting

 In light of the respondent’s prior neglect of another child in C.G.R. and her

demonstrated ongoing inability to maintain housing and employment to support her

current child, this Court held “the trial court’s finding that Mary ‘is at a substantial

risk of continued neglect as a result of [the respondent’s] failure to provide and

maintain stable housing and maintain employment’ was supported by the evidence

and findings.” Id.

 Here, the trial court’s order contains no findings of fact, which are supported

by any evidence, and certainly not “clear and convincing competent evidence,” that

J.A.M. is presently at substantial risk of neglect by Respondent-mother. The trial

court’s decision “must of necessity be predictive in nature, as the trial court must

assess whether there is a substantial risk of future abuse or neglect of a child based

on the historical facts of the case.” In re McLean, 135 N.C. App. 387, 396, 521 S.E.2d

121, 127 (1999) (emphasis supplied). The historical and current facts of this case,

regarding J.A.M’s care, shows no evidence to support either YFS’ allegations or an

adjudication of neglect. YFS’ allegations of neglect of J.A.M. cannot be validated

solely on what occurred to Respondent’s other children in a wholly different past and

closed case where all evidence before the court shows J.A.M. is receiving proper care.

See id.

 IV. Lacking Findings of Fact

 4
 IN RE: J.A.M.

 TYSON, J., dissenting

 The trial court neither found nor cited any evidence presented by YFS that

either of the parents had not remedied the issues that caused the prior injurious

environments. I do not diminish Respondent’s prior history in a closed and unrelated

case with her other children, and the fact one of her children was seriously injured by

that child’s father, while Respondent slept. However, the uncontroverted testimony

both YFS and Respondent presented at J.A.M.’s adjudication hearing “on the

historical facts of the case” shows she has not been neglected by either parent. See id.

 The court did not find J.A.M. had suffered from any neglect or abuse, or that

there is any future probability that she is at a substantial risk to suffer from any

physical, mental, or emotional impairment as a consequence of living in Respondent-

mother’s home. See In re M.P.M., 243 N.C. App. 41, 52, 776 S.E.2d 687, 694 (2015)

aff’d per curiam, 368 N.C. 704, 782 S.E.2d 510 (2016). The trial court also made no

findings of fact regarding any current domestic violence. No evidence was presented

of any instances of domestic violence between Respondent-mother and J.A.M.’s father

or anyone else, or that either parent had engaged in domestic violence while in

J.A.M.’s presence.

 The uncontroverted testimony at the adjudication hearing showed

Respondent’s home is safe and appropriate for J.A.M., that she was “well-cared-for”

by both parents, that no evidence of domestic violence between the parents had been

displayed, and that the police had never been called to their residence.

 5
 IN RE: J.A.M.

 TYSON, J., dissenting

 A YFS supervisor testified that Respondent refused to sign their safety

assessment, which was solely based upon YFS’ previous history with Respondent and

her other children, and in direct conflict with the findings from the home visit and

subsequent supervised visits. The YFS supervisor testified that when her social

worker went to Respondent’s home, Respondent reported “she had gone through

services, she didn’t need any services, and that there was no domestic violence going

on[.]” The supervisor testified the home was appropriate for the child, with adequate

supplies for her, and there were utilities, adequate food, clothing and a bed.

 All the evidence before the trial court shows Respondent-mother and J.A.M.’s

father maintained an appropriate home, and both denied any YFS services were

required to meet J.A.M.’s needs, or to correct conditions in their home or its suitability

for J.A.M. Based upon the home visits and interviews with both parents, YFS had

no evidence any such services were needed or authorized. No evidence in the record

and no findings support any lack of suitability of J.A.M.’s current home environment

or J.A.M.’s need for YFS’ intervention in this case.

 The trial court’s order further does not reflect any current or continuing

concern regarding domestic violence involving J.A.M.’s father, as the court’s

disposition order directs a primary plan of care for J.A.M. to be “reunification with

father.” Given the intervening years between the prior cases and the record facts

found before us, the trial court’s findings do not support a legal conclusion that J.A.M.

 6
 IN RE: J.A.M.

 TYSON, J., dissenting

is a neglected juvenile. See In re A.K., 178 N.C. App. 727, 732, 637 S.E.2d 227, 230

(2006) (holding the trial court erred in relying solely upon nine- and fifteen-month-

old orders concluding a juvenile’s sibling was neglected to support a conclusion that

the juvenile was also neglected).

 These findings do not support any conclusion that J.A.M. is a neglected

juvenile because she lives in an environment injurious to her welfare. YFS has failed

to show any current neglect or “a substantial risk of future abuse or neglect of [J.A.M.]

based on the historical facts of the case[.]” In re E.N.S. at 151, 595 S.E.2d at 170.

 The trial court makes no findings of fact, which are supported by “clear and

convincing competent evidence” to support an adjudication that J.A.M. is presently

at substantial risk of neglect by Respondent-mother to warrant YFS’ intervention.

Respondent-mother and J.A.M.’s father have the absolute constitutional, statutory,

and natural rights as parents to refuse YFS’ services or involvement in raising and

parenting their daughter in the absence of any statutory basis for YFS’ intervention.

Troxel v. Granville, 530 U.S. 57, 68-69, 147 L. Ed. 2d 49, 58 (2000), Santosky v.

Kramer, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606 (1982), In re Stumbo, 357 N.C. 279,

286, 582 S.E.2d 255, 261 (2003).

 YFS failed to provide any “clear and convincing competent evidence” of any

provision in the statute to either trigger and mandate their intervention and new

involvement. The only evidence YFS received and acted upon was a report that

 7
 IN RE: J.A.M.

 TYSON, J., dissenting

Respondent had given birth to another child. YFS’ follow-up visit to that report at

the home showed J.A.M. was healthy and receiving proper care from both parents,

and the conditions in the home were appropriate.

 The trial court’s disposition order directs a primary plan of care for J.A.M. to

be “reunification with father,” even though he had also had his parental rights

terminated to another child, not involving Respondent-mother. Father’s adjudication

is not before us.

 At this initial adjudication disposition, the trial court failed to allow any

unsupervised or meaningful visitation between the parents and their child,

notwithstanding that the YFS’ court summary admitted at the disposition hearing

indicated that the visits between Respondent-mother and J.A.M. were positive and

entirely appropriate. The trial court also failed to find or provide for J.A.M.’s

reunification with Respondent-mother as either a primary or alternative plan for

J.A.M.’s care, custody, or control. This failure, in light of all the “clear and convincing

competent evidence” of J.A.M. receiving proper care from both parents in an

appropriate home, is deeply troubling, and is a de facto termination of Respondent’s

parental rights. The majority’s opinion fails to recognize, reconcile and properly

apply our statutes and case law to this case.

 V. Conclusion

 8
 IN RE: J.A.M.

 TYSON, J., dissenting

 A prior and closed case with other children and a different father, standing

alone, cannot support an adjudication of current or future neglect of J.A.M by

Respondent. The majority’s opinion presumes Respondent’s continued lack of being

a fit and proper parent, based upon past adjudications of her other children. YFS has

no authority to intervene and inject itself into these parents’ care, custody and control

of their child in an appropriate home or to demand a services agreement in the

absence of a statutory basis to compel their involvement.

 On remand from the Supreme Court of North Carolina for proper application

of the appellate standard of review to the trial court’s findings and conclusions of law,

the majority’s opinion wholly fails to follow the statutory and constitutional

mandates. Both the Constitution of the United States, the North Carolina

Constitution, and the General Assembly’s public policy, expressed in the statutes,

demands YFS and the trial court to provide “procedures for the hearing of juvenile

cases that assure fairness and equity and that protect the constitutional rights of

juveniles and parents[.]” N.C. Gen. Stat. § 7B-100; Troxel v. Granville, 530 U.S. at

68-69, 147 L. Ed. 2d at 58.

 YFS failed to carry its burden to show any evidence to support an adjudication

of any neglect. The trial court’s findings do not support its conclusion to adjudicate

J.A.M. as neglected. Exercising the applicable standard of review, Respondent’s

constitutional and statutory rights as a parent, and the Supreme Court’s mandate,

 9
 IN RE: J.A.M.

 TYSON, J., dissenting

the trial court’s order is properly reversed. The majority opinion’s analysis and

conclusions are erroneous. I respectfully dissent.

 10