MURPHY, Judge.
Respondent appeals from an order terminating her parental rights. After careful review, we reverse.
BACKGROUND
Respondent ("Alicia"[1] ) is the mother of the juvenile P.R.T. ("Pat"). Pat began residing with Petitioners, Alicia's cousin and her now wife, in September 2012. On 31 July 2013, a civil consent order was entered in which Pat's father, Barry, and Alicia granted custody of Pat to Petitioners.
On 20 August 2015, Petitioners filed a petition alleging grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2), (4), (6), and (7) to terminate Alicia and Barry's parental rights. On 11 December 2015, Alicia moved to vacate or modify the 31 July 2013 custody order. On 22 February 2016, Alicia moved to dismiss the petition to terminate her parental rights, arguing the trial court lacked subject matter jurisdiction due to Petitioners' failure to attach a copy of the custody order of the minor child as required by N.C.G.S. § 7B-1104(5). Barry filed a similar motion on 26 February 2016.
On 4 March 2016, Petitioners moved to amend their petition, seeking to add an allegation of neglect pursuant to N.C.G.S. § 7B-1111(a)(1) and attach a copy of the 31 July 2013 custody order to the petition. Subsequently, Petitioners filed a new petition on 4 April 2016 alleging grounds existed to terminate Alicia and Barry's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), (4), (6), and (7). The trial court denied Petitioners' motion to amend and dismissed the initial petition to terminate Alicia and Barry's parental rights on 25 April 2016.
The trial court entered an order on 9 March 2018 in which it determined grounds existed to terminate Alicia and Barry's parental rights under N.C.G.S. § 7B-1111(a) based on (1) neglect, (2) failure to make reasonable progress, and (7) willful abandonment. The trial court further concluded it was in Pat's best interest that Alicia and Barry's parental rights be terminated. Accordingly, the trial court terminated their parental rights. Alicia appeals.[2]
ANALYSIS
Alicia argues the trial court erred by concluding grounds existed to terminate her parental rights under N.C.G.S. § 7B-1111(a)(1), (2), and (7). We consider each statutory ground for termination in turn and conclude the trial court erred in terminating Alicia's parental rights on these grounds.
A. Standard of Review
N.C.G.S. § 7B-1111 sets out the statutory grounds for terminating parental rights. When a trial court terminates parental rights, we review the trial court's findings of fact to determine whether they are supported by clear and convincing competent evidence and whether the findings of fact support the conclusions of law. In re J.A.M. , 370 N.C. 464, 464, 809 S.E.2d 579, 580 (2018) ; In re D.J.D. , 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005), appeal dismissed , disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). We review the trial court's conclusions of law de novo . In re S.N. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), aff'd per curiam , 363 N.C. 368, 677 S.E.2d 455 (2009).
B. N.C.G.S. § 7B-1111(a)(1) - Neglected Juvenile
N.C.G.S. § 7B-1111(a)(1) provides for termination of parental rights based upon a finding that "[t]he parent has ... neglected the juvenile" within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1) (2017). A neglected juvenile is defined as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]
N.C.G.S. § 7B-101(15) (2017).
Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.' " In re L.O.K. , 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting In re Ballard , 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) ). When, however, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, 'requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible.' " Id. (citing In re Shermer , 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) ). "In those circumstances, a trial court may find that grounds for termination exist upon a showing of a 'history of neglect by the parent and the probability of a repetition of neglect.' " Id. "The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Ballard , 311 N.C. at 715, 319 S.E.2d at 232. Thus, a trial court may terminate parental rights based upon prior neglect of the juvenile only if "the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to her parents." In re Reyes , 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000).
We note, in most cases, when applying the analysis set forth in Ballard , prior neglect is demonstrated by a prior adjudication of neglect. See In re M.A.W. , 370 N.C. 149, 153, 804 S.E.2d 513, 517 (2017) (stating "the trial court ... appropriately considered the prior adjudication of neglect as relevant evidence during the termination hearing"); In re J.H.K. , 215 N.C. App. 364, 371, 715 S.E.2d 563, 568 (2011) (affirming termination of parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) where there was a prior adjudication of neglect and sufficient findings demonstrating a likelihood of repetition of neglect). Here, however, while the trial court made findings regarding prior neglect, there was no prior adjudication of neglect. Instead, the trial court relied on two sets of findings to establish prior neglect. The first set of findings concerned seven reports made to the Department of Social Services ("DSS") where Alicia was alleged to have neglected Pat. Alicia challenges several of these findings to the extent they state that Pat was "found to be a victim of neglect." Alicia contends these findings improperly suggest a trial court made a legal conclusion that Pat was a neglected juvenile and are thus erroneous. We agree.
DSS is not an adjudicatory body and does not make findings that a juvenile is neglected. It is the sole province of the trial courts to adjudicate neglect. See N.C.G.S. § 7B-802 (2017) ("The adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition."). Instead, DSS's role is primarily investigatory and protective. See N.C.G.S. § 7B-302 (2017) ("When a report of abuse, neglect, or dependency is received, the director of the department of social services shall make a prompt and thorough assessment, using either a family assessment response or an investigative assessment response, in order to ascertain the facts of the case, the extent of the abuse or neglect, and the risk of harm to the juvenile, in order to determine whether protective services should be provided or the complaint filed as a petition."). Where DSS believes a child is at risk and in need of protective services, it is authorized to file a petition alleging neglect. See N.C.G.S. § 7B-403(a) (2017). Here, DSS never filed an action claiming Pat was neglected (and, thus, a court never found that the accusations were facts or that any facts resulted in a conclusion of neglect). Thus, the import of the trial court's findings is merely that DSS received allegations Pat was neglected. Consequently, we conclude that the trial court's findings that DSS "found" Pat to be neglected were erroneous.
The second set of findings relied upon by the trial court to support its determination there was prior neglect were findings Alicia: (1) was engaged in domestic violence with Barry; (2) abused opiates and alcohol and had overdosed on several occasions requiring resuscitation; (3) had a history of unstable housing and employment; (4) had multiple criminal convictions; (5) did not provide financial support for Pat; and (6) was involved in an intimate relationship with a man who had been previously imprisoned for sexually assaulting his daughter. The trial court also found Pat had once burned herself with a flat iron resulting in a dime-sized blister, but Alicia did not take her to the doctor "because the injury was not that bad."
The trial court's findings do not establish that Pat was neglected prior to 31 July 2013, when custody of Pat was transferred to Petitioners. Most of the trial court's findings fail to establish a timeline of when Alicia abused opiates or of other conditions alleged to be neglectful. Two of the trial court's findings regarding Alicia, which it placed under a heading of "past neglect," clearly concerned conditions which occurred after Petitioners were granted custody of Pat. Moreover, with the exception of the incident where Pat was burned with a flat iron, none of the trial court's findings establish any nexus between the alleged neglectful conditions and any harm or risk of harm to Pat. See In re Safriet , 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (stating that alleged neglectful conditions must cause the juvenile some physical, mental, or emotional impairment, or create a substantial risk of such impairment).
We are mindful "[w]here there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding." In re Padgett , 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003). However, such a lack of specificity on the timing of Alicia's allegedly neglectful conduct and whether the conduct occurred while Pat was in Alicia's custody, coupled with DSS's mere receipt of allegations, lead us to conclude the evidence before the trial court did not support such a finding. The trial court thus erred by concluding grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) to terminate Alicia's parental rights.
C. N.C.G.S. § 7B-1111(a)(2) - Removal
Under N.C.G.S. § 7B-1111(a)(2), the trial court may terminate parental rights where:
The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. ...
N.C.G.S. § 7B-1111(a)(2) (2017). Thus, the trial court must perform a two-part analysis and determine by clear and convincing evidence: (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months; and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. In re O.C. , 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (internal citations omitted), disc. review denied , 360 N.C. 64, 623 S.E.2d 587 (2005).
We interpreted the meaning of "left the juvenile in foster care or placement outside the home" and "removal of the juvenile" in In re A.C.F. , 176 N.C. App. 520, 626 S.E.2d 729 (2006). There, the mother of the juvenile first placed the juvenile with a third-party pursuant to a voluntary placement agreement in February 2002. Id. at 521, 626 S.E.2d at 731. DSS obtained custody of the child pursuant to a non-secure custody order on 26 November 2002. Id. On 11 September 2003, DSS filed a motion to terminate the mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (2). Id. The trial court subsequently terminated the mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2). Id. The mother of the juvenile appealed the termination, contending there was no removal under N.C.G.S. § 7B-1111(a)(2) until DSS obtained the non-secure custody order. Id. at 521-22, 626 S.E.2d at 731. As the non-secure custody order was entered less than twelve months preceding the motion to terminate parental rights, the mother argued a finding under N.C.G.S. § 7B-1111(a)(2) was erroneous. Id.
The issue before us in A.C.F. was thus whether a voluntary placement agreement could constitute a removal that triggers the twelve-month time period set out in N.C.G.S. § 7B-1111(a)(2). In resolving that case, we began by noting the "broad range of meanings" that "left the juvenile in foster care or placement outside the home" and "removal of the juvenile" could implicate. A.C.F. , 176 N.C. App. at 523-24, 626 S.E.2d at 732. We turned to our Supreme Court caselaw and principles of statutory construction to determine what the Legislature intended in enacting N.C.G.S. § 7B-1111(a)(2).
We first noted in A.C.F. that "our Supreme Court [has] observed that [a juvenile has] not been 'placed' or 'removed' for purposes of the applicable termination statute until the child had become the subject of a custody order ." Id. at 524, 626 S.E.2d at 733 (citing In re Pierce , 356 N.C. 68, 565 S.E.2d 81 (2002) ). We further stated that the use of "removal" in N.C.G.S. § 7B-1111(a)(2), when read in its entirety, "suggests that the child was involuntarily taken out of one's home" and that "a child cannot be involuntarily removed from a parent's home where the parent can withdraw his consent at anytime[,] ... [which] is generally the case when there is not a court order in place." Id. at 525, 626 S.E.2d at 733. Additionally:
To allow the termination ground set forth in G.S. § 7B-1111(a)(2) to be triggered no matter what the cause for a child's separation from his parent is inconsistent with affording parents notice that they are at risk of losing their parental rights. Instead, it is logical that the General Assembly, in adopting G.S. § 7B-1111(a)(2), was primarily concerned with allowing termination where a juvenile court was involved in the "removal" of the child.
Id.
Petitioners contend that A.C.F. ends our inquiry due to our conclusion that "the statute refers only to circumstances where a court has entered a court order requiring that a child be in foster care or other placement outside the home." A.C.F. , 176 N.C. App. at 526, 626 S.E.2d at 734. However, such an argument fails to recognize our analysis preceding this conclusion where we recognized that the General Assembly "was primarily concerned with allowing termination where a juvenile court was involved in the removal of the child." Id. at 525, 626 S.E.2d at 733 (emphasis added). As the use of various terminology in A.C.F. suggests, we did not answer the question of whether a consent custody order not issued by a juvenile court in a Chapter 7B proceeding constituted "removal" in that case. Thus, A.C.F . does not answer the question before us here, but, rather, guides our interpretation of N.C.G.S. § 7B-1111(a)(2).
It is true that when a consent custody order is entered in civil court, the parent granting the transfer of custody to another party cannot revoke his or her consent to the custody transfer. To this extent, our requirement in A.C.F. that " 'removal' cannot occur within the meaning of G.S. § 7B-1111(a)(2) where the parent has voluntarily agreed, in the absence of a court order, to place his child in another's home" is inapplicable here. See A.C.F. , 176 N.C. App. at 525, 626 S.E.2d at 733. However, this is not the only concern in determining whether a "removal" has occurred. N.C.G.S. § 7B-1111(a)(2) does not "broadly cover[ ] circumstances where parents leave their children in others' care without regard to involvement of the juvenile court ...." Id. (emphasis added). This is a salient concern, as "[t]here are an infinite variety of reasons parents decide to entrust their children's care to others." Id. To allow any court order transferring custody to constitute a removal under N.C.G.S. § 7B-1111(a)(2) would frustrate this concern. A consent custody order that takes place outside of Chapter 7B proceedings in a juvenile court does not guarantee that parents will receive "notice that they are at risk of losing their parental rights" guaranteed to them by the U.S. Constitution. See A.C.F. , 176 N.C. App. at 525, 626 S.E.2d at 733. Moreover, such a consent custody order does not necessarily consider as its central concern the State's child welfare interests. Thus, given that "the General Assembly, in adopting G.S. § 7B-1111(a)(2), was primarily concerned with allowing termination where a juvenile court was involved in the 'removal' of the child[,]" a "removal" under this statute does not occur without a juvenile court's involvement pursuant to Chapter 7B requiring the juvenile be in foster care or other placement outside the home. See id.
It is clear the 31 July 2013 consent custody order, which was not entered pursuant to Chapter 7B did not constitute removal or placement within the meaning of N.C.G.S. § 7B-1111(a)(2). Accordingly, we hold the trial court erred by concluding grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate Alicia's parental rights.
D. N.C.G.S. § 7B-1111(a)(7) - Willful Abandonment
N.C.G.S. § 7B-1111(a)(7) provides for termination of parental rights where "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7) (2017). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child. The word willful encompasses more than an intention to do a thing; there must also be purpose and deliberation." In re Adoption of Searle , 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) (internal quotations and citations omitted). "Although the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." In re D.M.O. , --- N.C. App. ----, 794 S.E.2d 858, 861 (2016) (internal citations, quotation marks, and alterations omitted).
Turning to the relevant six-month period in the case before us, we note the initial termination of parental rights petition was filed on 20 August 2015. This petition, however, was dismissed due to a jurisdictional defect. The second termination of parental rights petition correcting this defect was filed on 4 April 2016. Accordingly, the relevant sixth-month period under N.C.G.S. § 7B-1111(a)(7) was from 4 October 2015 to 4 April 2016, and we determine whether Alicia willfully abandoned Pat for this time period.
Alicia filed a motion in the original civil action on 11 December 2015 seeking to vacate the 13 July 2013 custody order and restore her custody rights, or alternatively, modify the order to allow visitation.[3] Alicia's attempt to gain custody of Pat during this period was sufficient to demonstrate she did not intend to forego all parental duties and relinquish all parental claims to Pat and renders the trial court's determination that Alicia willfully abandoned Pat erroneous. See In re D.T.L ., 219 N.C. App. 219, 222, 722 S.E.2d 516, 518 (2012) ("Respondent's institution of a civil custody action undermines the trial court's finding and conclusion that he willfully abandoned the juveniles ... and cannot support a conclusion that he had a willful determination to forego all parental duties and relinquish all parental claims to the juveniles."). Consequently, we conclude the trial court erred by determining grounds existed pursuant to N.C.G.S. § 7B-1111(a)(7) to terminate Alicia's parental rights.
CONCLUSION
The trial court erred in terminating Alicia's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (7). Accordingly, we reverse.
REVERSED.
Report per Rule 30(e).
Chief Judge McGEE and Judge HUNTER, Jr. concur.

Pseudonyms are used throughout this opinion to protect the identity of the juvenile and for ease of reading.

Barry does not appeal the trial court's order and is not a party to this appeal.

We note that Alicia's motion was filed in response to the initial 20 August 2015 termination of parental rights petition, which was subsequently dismissed due to a jurisdictional defect. Had the initial petition not been dismissed, Alicia's motion would not be considered in adjudication of the petition as it occurred subsequent to its filing.